```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
RONALD OCASIO,                                                    :
                                                                  :
                              Petitioner,                         :     14-CV-6097 (JMF)
                                                                  :
                -v-                                               :     MEMORANDUM OPINION
                                                                  :         AND ORDER
WILLIAM LEE,                                                      :
                                                                  :
                              Respondent.                         :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In 1994, Petitioner Ronald Ocasio was convicted in state court of second degree murder and sentenced principally to a prison term of twenty-two years to life. (Docket No. 13 ("Am. Pet.") 1). Proceeding *pro se*, he now challenges that conviction through a petition for the writ of habeas corpus brought pursuant to Title 28, United States Code, Section 2254, arguing primarily that his counsel was ineffective for failing to perfect his appeal. (*See id.* at 2). It is hard to see the point of the challenge, as Ocasio was convicted of various federal offenses four years after his state conviction and is serving a federal sentence of life plus forty-five years' imprisonment that would remain in effect even if he were successful here. But Ocasio's petition fails for a simple reason other than pointlessness: Coming *eighteen years* after his state conviction became final, it is patently untimely. Accordingly, and for the reasons stated below, the Petition must be and is dismissed.

## BACKGROUND

On July 14, 1994, judgment was entered in New York Supreme Court, Bronx County, convicting Ocasio, after a jury trial, of second-degree murder and sentencing him principally to a

prison term of twenty-two years to life.  (Am. Pet. 2).  Ocasio retained Steven R. Kartagener, Esq., to represent him on appeal.  (*Id.* at 3).  Kartagener filed a notice of appeal, which, although dated August 12, 1994, was stamped as received by the Supreme Court on August 16, 1994.  (*Id.*, Ex. 1 at 30).  Thereafter, however, the appeal was left to languish as Kartagener never filed a brief or appendix; nor did the appellate court ever formally dismissed it.  (Am. Pet. 4).  According to Kartagener, he and Ocasio jointly decided not to pursue the state-court appeal because of the intervening federal indictment, which eventually resulted in Ocasio's conviction on multiple counts of murder, attempted murder, and narcotics trafficking and the sentence of life plus forty-five years' imprisonment.  (Docket No. 19 ("Chamoy Decl.") Ex. 1 at 13).  As Kartagener explained, Ocasio "acknowledged that it made absolutely no sense for him to proceed with his state-court appeal unless and until" his federal conviction was vacated.  (*Id.* at 3).

Consistent with Kartagener's description, Ocasio focused his efforts in the years following his convictions on obtaining relief from his federal conviction and sentence, all to no avail.  Assisted by Kenneth D. Wasserman, Esq., he filed a direct appeal to the United States Court of Appeals for the Second Circuit, which affirmed his conviction on September 29, 2000.  *See United States v. Carrillo*, 229 F.3d 177 (2d Cir. 2000).  Thereafter, assisted by Kartagener, Ocasio filed a motion to vacate his federal conviction pursuant to Title 28, United States Code, Section 2255.  (Chamoy Decl., Ex. 1 at 29).  On August 9, 2012, the Honorable Debra A. Batts, United States District Judge for this District, denied the motion.  *See Ocasio v. United States*, No. 08-CV-1305 (DAB), 2012 WL 3245419, at *1 (S.D.N.Y. Aug. 9, 2012).  Between 1994 and 2012, Ocasio made no effort — either *pro se* or through counsel — to pursue his state appeal.  Nor is there any indication that he asked Kartagener or a court about the status of his state appeal prior to 2012.

On September 25, 2012, more than eighteen years after his notice of appeal was filed, Ocasio wrote to the Supreme Court of the State of New York, Appellate Division, First Department ("First Department") to inquire about the status of his state appeal.  (Am. Pet., Ex. 1 at 37).  He wrote again on October 16, 2012 (*id.* at 38), and December 11, 2012 (Chamoy Decl., Ex. 3).  On February 13, 2013, having received no response to his letters, Ocasio filed a petition for a writ of error *coram nobis* in the First Department, alleging that he had received ineffective assistance of counsel because Kartagener had abandoned his direct appeal.  (Am. Pet., Ex. 1 at 6, 11).  The First Department treated Ocasio's letters as a motion for an extension of time to file a notice of appeal, and on February 20, 2014, the First Department denied that motion and his writ of error *coram nobis*.  (Am. Pet. 50).  Thereafter, Ocasio requested leave to appeal the First Department's rulings, which the New York State Court of Appeals denied on May 27, 2014.  (*Id.*, Ex. 3 at 44).

Ocasio filed the present Petition on July 8, 2014.  (Docket No. 1).  On December 2, 2014, the Honorable Loretta A. Preska, then Chief Judge, ordered Ocasio to amend his Petition to allege facts showing "why his petition is timely" and any "facts that show that he has been pursuing his rights diligently and that some extraordinary circumstance prevented him from timely submitting his petition."  (Docket No. 6, at 4).  On April 1, 2015, Ocasio filed the operative Amended Petition.  Liberally construed, it presents three arguments for why it should be deemed timely: (1) because his conviction is still not final (*see id*. at 13); (2) because the First Department's lack of decision on his appeal was an impediment to filing and thus tolled the limitations period (*see id.* at 14); and (3) because he did not discover that Kartagener had failed to perfect the appeal until one year before filing this petition (*see id.* at 17).  Petitioner also argues that he is entitled to equitable tolling.  (*See id.* at 8-11).

## DISCUSSION

With the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, on April 24, 1996, Congress established a one-year statute of limitations for the filing of a habeas petition by a person in custody pursuant to a state court conviction. *See* 28 U.S.C. § 2244(d)(1). The one-year period runs from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*; *see also id.* § 2244(d)(2) (providing that "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted"). A prisoner whose conviction became final prior to AEDPA's effective date of April 24, 1996, was granted a one-year "grace period" — to April 24, 1997 — in which to file a habeas petition absent a basis to toll the deadline. *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998).

Applying those rules here, Ocasio's Petition is plainly untimely. As an initial matter, Ocasio's conviction became final on August 15, 1994. That is because, under New York law, he had until Monday, August 15, 1994 — the first business day after thirty days from the date upon which sentence was imposed (July 14, 1994) — to file a notice of appeal. *See* NYCPL § 460.10(1)(a); *see also* N.Y. Gen. Const. Law § 25-a

4

(providing that when a filing deadline falls on a weekend, "such act may be done on the next succeeding business day"). Ocasio did not file his notice of appeal until August 16, 1994. Accordingly, his conviction became "final" for purposes of Section 2244(d)(1)(A) on August 15, 1994, *see, e.g.*, *Gonzalez v. Thaler*, 132 S. Ct. 641, 644 (2012); *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002); *accord People v. Varenga*, 26 N.Y.3d 529, 532 (2015) ("[W]here a defendant does not take a timely direct appeal from the judgment, and does not move for leave to file a late notice of appeal pursuant to CPL 460.30(1), the judgment becomes final 30 days after sentencing, on the last day that a defendant has an inviolable right to file a notice of appeal pursuant to CPL 460.10(1)(a)."), and he had until April 24, 1997, to file his habeas petition, *see Ross*, 150 F.3d at 103.[1] Because he did not file his Petition (or any state post-conviction motions) before April 24, 1997, it is time barred unless tolling is applicable. *See, e.g.*, *Evans v. Senkowski*, 228 F. Supp. 2d 254, 260 (E.D.N.Y. 2002) ("It is important to note that AEDPA's tolling provision does not allow the one-year period to run anew each time a post-conviction motion is ruled upon. Instead, the statute merely excludes from the calculation of the one-year period any time during which post-conviction relief is pending.").

Ocasio is also not entitled to statutory tolling under Section 2244(d)(1)(B). That provision allows a petitioner to file within one year of "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State

---

[1]  Ocasio's letters to the First Department, which the latter construed as a request to deem his notice of appeal timely or an extension of time to file his appeal, did not "restart" his time to file under AEDPA. *See, e.g.*, *Bethea*, 293 F.3d at 578.

action." The existence of such an impediment is akin to "official interference." *Acosta v. Artuz*, 221 F.3d 117, 125 (2d Cir. 2000).  Here, there was no state-created impediment to filing a federal habeas petition.  Kartagener's failure to timely file the notice of appeal (or perfect the appeal thereafter) obviously does not qualify.  *See, e.g.*, *Goodwin v. Pallito*, No. 2:14-CV-110 (WKS), 2015 WL 778613, at *3 (D. Vt. Feb. 24, 2015) ("[E]ven assuming that [the petitioner's] counsel was incompetent or ineffective in failing to advise him of AEDPA's limitations period or in failing to file a [state post-conviction] petition, that does not amount to a State impediment under § 2244(d)(1)(B).").  And, despite Ocasio's argument to the contrary (Am. Pet. 14), the alleged failure of the First Department to notify him that his direct appeal was untimely did not prevent him from filing a federal habeas petition, let alone do so in a manner that violated either the Constitution or federal law.  Put simply, Ocasio's conviction became final, by operation of law, on August 15, 1994.  The fact that the First Department did not formally dismiss Ocasio's untimely appeal did not prevent Ocasio from discovering that or from timely filing the Petition.

Nor does Section 2244(d)(1)(D) — the only other provision upon which Ocasio relies — save the Petition from dismissal.  That provision "resets the limitations period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued." *Chettana v. Racette*, No. 9:15-CV-0028 (MAD), 2016 WL 447716, at *5 (N.D.N.Y. Feb. 4, 2016) (internal quotation marks omitted); *see also Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000) (analyzing the "parallel" provision of 28 U.S.C. § 2255).  "The determination of the date on which the factual predicate for a habeas claim is first discoverable is a 'fact-specific' inquiry which

requires a district court to analyze the factual bases of each claim and to determine when the facts underlying the claim were known, or could with due diligence have been discovered." *Rivas v. Fischer*, 687 F.3d 514, 534 (2d Cir. 2012). To determine if facts could have been discovered through the exercise of due diligence, a district court's "proper task . . . is to determine when a duly diligent person in [the] petitioner's circumstances would have discovered" those facts. *Wims*, 225 F.3d at 190. Here, that requires Ocasio to show that a "duly diligent person" in his circumstances would not "have discovered that no appeal [or notice of appeal] had been filed." *Id.*

Ocasio cannot make that showing. More to the point, he cannot show that a "duly diligent person" in his circumstances would have not discovered the failure to file a timely notice of appeal or failure to perfect the appeal prior to April 5, 2012, which represents one year before his Petition was filed, excluding the 320 days during which his state *coram nobis* petition was pending (February 19, 2013, to May 27, 2014) and the limitations period was thus tolled pursuant to Section 2244(d)(2). *See Wims*, 225 F.3d at 190. Notably, Ocasio does not specifically allege that he inquired of Kartagener or the state court about the status of his direct appeal between 1994 and 2012 — a period of *eighteen years*. If anything, the information Ocasio provides establishes that he was focused exclusively on attacking his federal conviction (and its longer sentence). In the letters he wrote to Kartagener between April 2008 and June 2012, he inquired about his Section 2255 petition, but never once mentioned or inquired about his state court appeal. (Am. Pet., Ex. 3 at 51-59). Similarly, in Ocasio's affidavit (which appears to be missing the first page), he affirms only that from 2000 to 2012, Kartagener did not respond to communications about his Section 2255 petition. (*Id.* at 54). Ocasio states vaguely that,

7

in response to a lack of communication from Kartagener, he "began to investigate the circumstance [sic] surrounding [his] Federal case and [Kartagener's] delay in filing [the] State Direct Appeal [sic]." (*Id.* at 55). But such statements are not enough to carry Ocasio's burden to show due diligence in the eighteen years between when his state conviction became final and when April 5, 2012. *See, e.g*, *McPhee v. Griffin*, No. 13-CV-4660 (PKC), 2014 WL 5427667, at *3 (E.D.N.Y. Oct. 24, 2014) (holding that the petitioner's ambiguous statements failed to show that he had acted with due diligence during the twenty-five-year delay between the attorney's failure to file notice of appeal and his habeas petition); *Plowden v. Romine,* 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (holding that the petitioner's seventeen-month delay in inquiring about the status of his appeal did not show reasonable due diligence).

For similar reasons, there is no basis for equitable tolling of the statute of limitations, which is available only in "rare and exceptional circumstances." *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001). To be eligible for equitable tolling, Ocasio must show that he "pursu[ed] his rights diligently" and that "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 632 (2010) (internal quotation marks omitted). When assessing whether a petitioner faced "extraordinary circumstances," courts ask not whether the circumstance was "unusual . . . , but rather how severe an obstacle it [posed] for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). The extraordinary circumstance must be a type of "external obstacle" that was beyond the petitioner's control. *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016) (internal quotation marks and brackets omitted). Moreover, a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on

8

which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence could have filed on time notwithstanding the extraordinary circumstances." *Valverde v Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see also, e.g.*, *Rivas*, 687 F.3d at 538 (noting that to qualify for equitable tolling, a petitioner must show, among other things, "that some extraordinary circumstance stood in his way and prevented timely filing").

Applying those standards here, Ocasio plainly cannot avail himself of equitable tolling. First, for the reasons stated above, he does not — and cannot — establish that he pursued his rights diligently "throughout the period to be tolled." *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011); *cf. Peck v. United States*, No. 03-CR-496 (TJM), 2006 WL 3762003, at *4 (N.D.N.Y. Dec. 20, 2006) (holding that the petitioner's decision to focus on a state appeal rather than a federal appeal did not demonstrate due diligence with regard to the federal appeal). Put simply, there is no reasonable explanation for Ocasio's failure to even inquire about the status of his state appeal for over eighteen years (except for the one proffered by Kartagener — that Ocasio made the rational decision to focus on attacking his federal conviction and sentence — which would obviously not justify the delay). Second, Ocasio fails to identify an "extraordinary circumstance" that stood in his way and "prevented timely filing." *Holland*, 560 U.S. at 632. At most, Ocasio's submissions can be read to point to Kartagener's failures to file a timely state appeal or perfect that appeal as the circumstances that prevented him from timely filing the Petition. (*See* Am. Pet. 9; Docket No. 28, at 7). But "garden variety attorney error" — even where it prevents timely filing of a federal habeas petition — doe not "*on its own* rise to the level of extraordinary circumstances." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (emphasis in original). And here, Kartagener's failures did not pose any obstacle to the timely filing of a

9

*federal* habeas petition, let alone an obstacle that lasted for eighteen years. *See, e.g.*, *Walker v. Unger*, No. 9:10-CV-1241 (TJM/ATB), 2011 WL 3240440, at *4 (N.D.N.Y. Apr. 20, 2011) ("The failure to file a notice of appeal is not a rare or exceptional circumstance, nor was petitioner prevented from filing his petition in a timely manner."); *M.P. v. Perlman*, 269 F. Supp. 2d 36, 39 (E.D.N.Y. 2003) (holding that counsel's alleged ineffectiveness in filing a request for leave to appeal in state court did not interfere with the petitioner's ability to timely file a federal habeas petition).

## CONCLUSION

In short, it is clear from the fact of Ocasio's Petition (and attached papers) that he is time-barred from habeas relief. *See Wims*, 225 F.3d at 190-91. Accordingly, the Petition must be and is dismissed. As Ocasio has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g., Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). In addition, the Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is directed to mail a copy of this Opinion and Order to Ocasio and close the case.

SO ORDERED.

Date: February 2, 2017
New York, New York

_____
JESSE M. FURMAN
United States District Judge